UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SELECT SPECIALTY HOSPITAL-
ANN ARBOR, INC. (MATTILA)

          Plaintiff,

v.                                                        Case No. 14-14412
                                                          HON. TERRENCE G. BERG
THE SECRETARY OF HEALTH AND          HON. DAVID R. GRAND
HUMAN SERVICES,

          Defendant.

_____/

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. 7)

In this case, a hospital that treated a patient covered by Medicare is suing the Secretary of Health and Human Services for reimbursement of the costs for over three months of treatment and procedures. The agency argues that the hospital never submitted its reimbursement claim correctly, and therefore this case is not properly before this Court and must be dismissed.

## I.    PROCEDURAL POSTURE

Plaintiff Select Specialty Hospital-Ann Arbor, Inc. brings this suit against Defendant Secretary of Health and Human Services seeking declaratory and injunctive relief. (*See* Dkt. 1, §§ 25-26, p. 6.) Plaintiff, a hospital in Ypsilanti, Michigan, treated patient Milda Mattila ("Mattila") from December 27, 2012 through April 12, 2013. (Dkt. 13, p. 6.) The parties agree that Mattila was insured by Medicare when Plaintiff treated her. (*See* Dkt. 1, ¶ 4; Dkt. 7, p. 7.) However, Medicare has not reimbursed Plaintiff for the care Plaintiff provided because it

maintains that Plaintiff has not filed a valid claim for reimbursement and the statutory deadline to do so has expired. (*See* Dkt. 7, pp. 12-13.)

Defendant now moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. 7.) In its complaint, Plaintiff alleges subject matter jurisdiction on the bases of federal question jurisdiction pursuant to 28 U.S.C. §1331 and diversity jurisdiction pursuant to 28 U.S.C. §1332. (Dkt. 1, ¶¶ 13-18.) Defendant, however, maintains that this Court has no subject matter jurisdiction over this case on either basis. (*See* Dkt. 7.)

Defendant argues that diversity jurisdiction does not exist because agencies of the United States are not citizens of any state for the purposes of 28 U.S.C. §1332. (Dkt. 7, p. 9.) Moreover, 42 U.S.C. §405(h), incorporated into the Medicare Act via 42 U.S.C. §1395ii, prevents this Court from exercising federal question jurisdiction because Plaintiff: (1) never presented its claim to the Secretary or received an initial claim determination; and thus could not (2) exhaust its administrative remedies by appealing an initial determination through the administrative appeals process and receive a final decision from the Secretary for this Court to review. (*Id.* at 6, 11-12.) In short, Defendant alleges that Plaintiff is attempting to bypass the administrative review process and proceed directly to federal court.

In response, Plaintiff argues that: (1) it should not be required to exhaust its administrative remedies because proceeding through the administrative review process would have been futile; (2) Defendant should be equitably estopped from

2

arguing that Plaintiff failed to exhaust its administrative remedies because the employee of a Medicare contractor gave Plaintiff erroneous information regarding the filing and status of its claim; or (3) the Court should rely on equitable tolling principals to excuse Plaintiff's failure to resubmit its claim within the Medicare Act's one-year deadline established in 42 C.F.R. 424.44(a)(1). (Dkt. 13, pp. 8-13.) In its supplemental brief submitted on October 19, 2015, Plaintiff also maintains that the Court should find that the six-month extension of time to file a claim pursuant to 42 C.F.R. §424.44(b)(5) applies. (Dkt. 17, p. 4.)

After oral argument on September 28, 2015, the Court directed the parties to submit supplemental briefing on the following points: (1) when Plaintiff was sent a computer-generated message rejecting Plaintiff's claim for reimbursement; (2) the format of the message and what details it contained; (3) when Plaintiff received the claim rejection message; (4) whether Douglas C. Dyer ("Dyer") is employed by Novitas Solutions, Inc.; and (5) the dates and details of any conversations that took place between Plaintiff and Dyer. The parties timely submitted their supplemental briefs by October 19, 2015. (*See* Dkts. 16-17.)

Defendant's motion is now fully briefed, all supplemental briefing has been submitted, and oral argument has been heard. While the Court has some sympathy with Plaintiff's dilemma, the agency must be given the opportunity to decide, before the Court intervenes, whether and how to apply its own policies and regulations, and to correct any irregularities in its own procedure, in the context of these particular facts. Because the Court will find that the agency has not yet been

afforded such an opportunity, the law requires that Defendant's motion be **GRANTED** and this case be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

## II. FACTUAL BACKGROUND

The Medicare Act establishes a federal program of health insurance for the elderly and disabled. *See* 42 U.S.C. §1395, *et seq.* The Secretary of Health and Human Services ("the Secretary") administers the Medicare program, but has delegated most administrative responsibilities to Centers for Medicare and Medicaid Services ("CMS"). *See* Health Care Financing Administration; Statement of Organization, Functions, and Delegations of Authority, 46 Fed. Reg. 56,911 (Nov. 19, 1981); *see also* 42 C.F.R. §400.200. CMS is authorized to use contractors to administer the Medicare program. *See* 42 U.S.C. §§1395h, 1395u; 42 C.F.R. §421.5. In this case, CMS authorized Novitas to assist with processing Medicare claims, and as a Medicare administrative contractor, Novitas is bound by the Medicare statute, the regulations and guidelines issued by CMS.

In October 2012, Milda Mattila received a contaminated methylprednisolone acetate ("MPA") injection for joint pain at the Michigan Pain Specialists clinic in Ann Arbor, Michigan. (Dkt. 13, p. 6.) As a result of ensuing complications, Mattila required significant medical intervention and treatment at Plaintiff Select Specialty Hospital-Ann Arbor, Inc.'s Ypsilanti, Michigan facility from December 27, 2012 to April 12, 2013. (*See* Dkt. 1, ¶¶ 2-3; Dkt. 1, Ex. E, p. 1.) Mattila was covered by Medicare health insurance at the time of treatment. (Dkt. 7, p. 17.)

On November 16, 2012, Mattila filed a products liability suit in the Eastern District of Michigan arising out of the contaminated MPA injection. (Dkt. 13, p. 6, Ex. B.) Before judgment could be rendered, however, the Defendant in that case, New England Compounding Pharmacy, Inc. ("New England"), filed for Chapter 11 bankruptcy. (Dkt. 13, p. 6, Ex. C.) Consequently, Mattila's suit was stayed on January 31, 2013. (Dkt. 13, p. 6.) On February 28, 2013, Mattila's case was transferred to the District of Massachusetts as part of a multidistrict litigation proceeding against Defendant New England.[1] *See Mattila et al v. New England Compounding Pharmacy, Inc.*, Case No. 12-15083 (E.D. Mich), Dkt. 12.

On June 25, 2013,[2] Novitas received an electronically-submitted claim from Plaintiff requesting a conditional payment totaling $501,515.23 for Mattila's medical care. (*See* Dkt. 1, ¶¶3-4; Dkt. 7, Ex. 1.) By filing this type of claim, Plaintiff asked Medicare to pay Mattila's treatment expenses now on the condition that Medicare would be reimbursed from any lawsuit settlement proceeds. (Dkt. 7, Ex. 2, ¶ 5.) Plaintiff submitted its claim via the Fiscal Intermediary Shared System ("FISS"), a computer system through which enables providers like Plaintiff to communicate with Novitas in order to submit claims and review claim-related information. (*See* Dkt. 16, Ex. 1, ¶¶3-4; Dkt. 17, p. 2.)

---

[1] This multidistrict litigation proceeding is open and ongoing as of the date of this order. *See In re: New England Compounding Pharmacy, Inc.*, MDL no. 2491, Case No. 13-md-2491 (D. Mass.)

[2] The parties dispute the date Plaintiff submitted its Mattila claim – Plaintiff maintains that it submitted its claim on June 21, 2013 (Dkt. 17, p. 2) while Defendant asserts that the claim was submitted on June 25, 2013 (Dkt. 16, p. 2). The computer-generated claim rejection message indicates that the claim was *received* on June 25, 2013. (*See* Dkt. 7, Ex. 1.) The Court thus recognizes June 25, 2013 as the date Plaintiff's claim was received for processing by Novitas.

On July 25, 2013, approximately one month after Plaintiff submitted the Mattila claim, Novitas posted notice of its rejection on FISS. (*See* Dkt. 7, Ex. 1; Dkt. 17, Ex. A, ¶ 5.) Plaintiff acknowledges becoming aware of the rejection notice on or about that same date. (Dkt. 17, p. 2.) FISS automatically rejects incorrectly-coded claims. (Dkt. 7, Ex. 2, ¶ 6.) In this case, there was a coding discrepancy because the claim was submitted under "Claim Adjustment Reason Code 20" ("CARC 20"), a code indicating that Plaintiff has already received payment from a primary liability carrier and is billing Medicare as a secondary payer, but with a "Value Code" indicating that no money had been received from the primary insurer.[3] (*See* Dkt 7, Ex. 1 and Ex. 2, ¶ 7-8.) A claim coded under CARC 20 is thus inconsistent with the conditional payment Plaintiff was seeking from Medicare and with the Value Code Plaintiff submitted. Accordingly, FISS automatically rejected Plaintiff's conditional payment claim because it was billed incorrectly. (*See* Dkt. 7, Ex. 1 and Ex. 2, ¶ 7.)

Upon detecting the discrepant code values, FISS generated a notice explaining that the claim had been rejected under rejection code 31266. (*See* Dkt. 7, Ex. 1.) Rejection code 31266 is used to indicate a discrepancy between the CARC

---

[3] A Claim Adjustment Reason Code ("CARC") is used to communicate financial adjustments to a claim such as reductions or increases in payment – in short, why a claim was paid differently than it was billed. Centers for Medicare and Medicaid Services, *Medicare Claims Processing Manual*, ch. 22 §60.2, issued on July 2, 2015, *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/clm104c22.pdf. CARC 20 indicates that an injury or illness is covered by the liability carrier. Washington Publishing Company, Claim Adjustment Reason Codes, http://www.wpc-edi.com/reference/codelists/healthcare/claim-adjustment-reason-codes/ (last updated Jan. 1, 2016). A Value Code is used to report the amount paid on a claim by the primary insurer. (Dkt. 7, Ex. 2, ¶ 8.) According to the FISS rejection notice, Plaintiff submitted its claim with a Value Code of zero or that was left blank. (*See* Dkt. 7, Ex. 1.) Plaintiff thus submitted a claim purporting to bill Medicare as the secondary payer because payment had been received from a primary insurer but also indicating that the primary insurer had not paid anything on Plaintiff's claim. (*See id.*)

and the Value Code. (Dkt. 7, Ex. 2, ¶ 8.) The notice included a narrative statement explaining that there was a discrepancy between the CARC and Value Code charges[4] and directed Plaintiff to "cancel the rejected claim, make corrections as needed on a new claim and submit." (Dkt. 7, Ex. 1.) Plaintiff, however, never followed these instructions and cannot resubmit this particular claim now because the one-year deadline to do so established by 42 C.F.R. §424.44(a)(1) has expired.[5] (*See* Dkt. 13, p. 7.)

Plaintiff maintains that it relied on incorrect instructions and information from Novitas employee Douglas Dyer. Dyer has worked for Novitas since 2008, and has been a manager in the Claims Department since July 2012. (Dkt. 16, Ex. 1, ¶ 9.) According to Plaintiff, it "had discussions" with Dyer at some point prior to submitting the Mattila claim about how to properly submit it. (Dkt. 17, Ex. A, ¶ 3.) Plaintiff does not document when these conversations occurred, how many such conversations Plaintiff had with Dyer, or their content,[6] but Plaintiff asserts that it

---

[4] The narrative statement in the rejection notice explains that the claim "was submitted containing a value code with the associated charges being either blank or zero" but "was transmitted with one of the following claim adjustment reason codes (CARCS) with charges greater than zero: […] 20 […]." (Dkt. 7, Ex. 1.)

[5] Section 424.44(a)(1) states in relevant part that "for services furnished on or after January 1, 2010, the claim must be filed no later than the close of the period ending 1 calendar year after the date of service." Mattila was treated from December 27, 2012 through April 12, 2013. (*See* Dkt. 1, Ex. E, p. 1.) Plaintiff submitted a claim for Mattila's treatment on or about June 25, 2013 that was rejected on July 25, 2013. (*See* Dkt. 7, Ex. 1; Dkt. 17, Ex. A, ¶ 5.) Plaintiff thus had at most approximately eight months from the rejection date to correct and resubmit its claim.

[6] At the hearing, the parties informed the Court that Plaintiff's phone conversations with Dyer were likely not recorded. There are no call logs, recordings, or transcripts in the record. With respect to the content of these alleged conversations, Plaintiff has filed the affidavit of Tonya Williams who states that Plaintiff "had discussions" with Dyer prior to submitting the Mattila claim and had "subsequent discussions" with Dyer, "specifically on October 23, 2013", which caused Plaintiff to believe that its claim was denied and that its resubmission would be futile. (Dkt. 17, Ex. A, ¶¶ 4-8.)

coded its claim under CARC 20 because Dyer instructed Plaintiff to do so. (*Id.* at ¶¶ 3-4.)

After its claim was rejected, Plaintiff maintains that it did not resubmit its claim because of Dyer's representation that any such action would be futile. (*See id.* at ¶¶ 6-8.) On October 23, 2013, three months after Plaintiff acknowledges becoming aware of the FISS rejection notice and resubmission instruction, Plaintiff asserts that it spoke with Dyer again about the Mattila claim. (*Id.* at ¶ 6.) Dyer allegedly stated that Medicare would not pay the claim until Mattila's pending litigation against New England was resolved. (*Id.*) Based solely on Dyer's oral representations, Plaintiff says it "understood the claim was denied" and believes therefore that its resubmission "would be futile." (*Id.* at ¶¶ 6-8.) The next day, on October 24, 2013, Plaintiff sent Mattila a letter informing her that its Medicare claim for her inpatient stay had been denied and that she was required to pay the $501,515.23 balance within 30 days. (Dkt. 1, Ex. B.) Plaintiff, however, had not received any initial determination from Novitas[7] in a "Remittance Advice" notice[8] or

---

[7] Pursuant to 42 U.S.C. §1395(a)(2)(A), an initial claim determination "shall be concluded by not later than the 45-day period beginning on the date the fiscal intermediary or the carrier, as the case may be, receives a claim for benefits" and notice of the determination shall be mailed to the claimant "before the conclusion of such 45-day period."

[8] An electronic or paper Remittance Advice notice is a notice of initial determination that a Medicare contractor such as Novitas will use to communicate claims processing decisions to claimants and that can include the initial determination as well as instructions for requesting a redetermination if the claimant disagrees with the decision. *See* Centers for Medicare and Medicaid Services, *Remittance Advice Information: An Overview* (April 2013), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/Remit-Advice-Overview-Fact-Sheet-ICN908325.pdf; *see also* 42 C.F.R. § 405.921(b). In this case, Plaintiff never received any Remittance Advice notice. Plaintiff only received a notice via FISS of rejection for improper coding with an instruction to correct the error and resubmit the claim. (*See* Dkt. 7, Ex. 1.)

in any other form, indicating definitively that its claim has been denied or even considered.

On February 24, 2014, approximately four months after its last documented conversation with Dyer and seven months after receiving the rejection notice, Plaintiff sent a Medicare Redetermination Request[9] to Novitas. (Dkt. 1, Ex. 5.) Plaintiff requested that Novitas: (1) reconsider its denial of Plaintiff's claim; and (2) refer Plaintiff's claim to a Medicare Secondary Payer Recovery Contractor for conditional payment. (*Id.*) Plaintiff does not reference Dyer or the rejection notice in the redetermination request, but states "that Medicare has denied [Plaintiff's] claims because Mrs. Mattila has asserted a products liability claim against the manufacturer of the tainted injection [manufactured by] New England Compounding Pharmacy, Inc." (*Id.* at 1.)

---

[9] The procedures for conducting appeals of Medicare claims are well-established. *See* 42 C.F.R. §§ 405.900 et seq.; 42 U.S.C. §§ 1395ff. The Medicare claim appeal process consists of five steps: (1) submitting a redetermination request to a Medicare contractor after receiving an initial determination; (2) reconsideration by a qualified independent contractor of the redetermination decision; (3) a hearing before an Administrative Law Judge ("ALJ"); (4) review by the Medicare Appeals Council of the ALJ's decision; and (5) judicial review of the Secretary's final decision in United States District Court. *See generally* Centers for Medicare and Medicaid Services, *Medicare Parts A & B Appeals Process* (Feb. 2015), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/medicareappealsprocess.pdf. Submitting a redetermination request to a Medicare Administrative Contractor such as Novitas is thus the first of five steps in the Medicare claims appeal process. *See* 42 C.F.R. § 405.904(a)(2); *see also Medicare Parts A & B Appeals Process*, pp. 2-3. A request for redetermination must be filed within 120 days of receiving notice of the initial determination and instructions for submitting a redetermination request. *See* 42 C.F.R. § 405.942(a). The Medicare Administrative Contractor will consider the request and will issue a decision within 60 days of receipt of the request for redetermination. *See* 42 C.F.R. § 405.950(a). Here, Plaintiff submitted a request for redetermination approximately seven months after receiving the claim rejection notice and without having received a Remittance Advice notice or initial determination. When Plaintiff did not receive a reply to its step-one request, Plaintiff proceeded to the *fifth* step in the appeals process – seeking judicial review in federal court.

9

After waiting approximately eight months without receiving any response from Novitas[10] (*See* Dkt. 17, Ex. A, ¶ 10.), Plaintiff filed the above-captioned case in this Court on November 18, 2014 (*See* Dkt 1). Defendant maintains that subject matter jurisdiction does not exist. (Dkt. 7, p. 4.) Defendant also asserts that, within a month of the claim's submission, it provided Plaintiff with notice of and an explanation for the claim rejection, and instructed Plaintiff to correct and resubmit the claim. (*Id.* at 5-6.) Because Plaintiff's claim was not *denied* by Medicare but merely *rejected* and never resubmitted, Medicare has never had the opportunity to make an initial claim determination that Plaintiff could appeal through the Medicare appeals process.[11] (*Id.* at 10-13.) The one-year deadline for submitting a claim has now expired. Accordingly, Defendant argues that this case must be dismissed for lack of jurisdiction. (*See id.* at 6.)

---

[10] Pursuant to 42 U.S.C. §1395ff(b), a request for redetermination "shall be concluded by not later than the 60-day period beginning on the date the fiscal intermediary or the carrier, as the case may be, receives a request for a redetermination."

[11] A rejection, unlike a denial, is not an appealable initial determination. *See* 42 C.F.R. § 405.924(b) ("A finding that a request for payment or other submission does not meet the requirements for a Medicare claim as defined in § 424.32 of this chapter, is not considered an initial determination."); *see also* 42 C.F.R. § 405.926. Appeals rights are detailed in 42 U.S.C. §1395ff(b), which states in relevant part:

> Subject to subparagraph (D), any individual dissatisfied with any initial determination under subsection (a)(1) of this section shall be entitled to reconsideration of the determination, and, subject to subparagraphs (D) and (E), a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and, subject to paragraph (2), to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. For purposes of the preceding sentence, any reference to the "Commissioner of Social Security" or the "Social Security Administration" in subsection (g) or (l) of section 405 of this title shall be considered a reference to the "Secretary" or the "Department of Health and Human Services", respectively.

10

### III.   LEGAL STANDARD

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court does not have subject matter jurisdiction over this case under 28 U.S.C. §1331, 28 U.S.C. §1332, or the Medicare appeals process. (*See* Dkt. 7.) Where subject matter jurisdiction is challenged in a Rule 12(b)(1) motion, the Plaintiff bears the burden of proving jurisdiction. *See Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Subject matter jurisdiction is established on the basis of federal question or diversity jurisdiction. *See* 28 U.S.C. §§ 1331-1332. Because federal agencies are not citizens of any state and cannot be sued in diversity, the only possible basis for subject matter jurisdiction in this case is federal question jurisdiction.[12] *Texas v. Interstate Commerce Comm'n*, 258 U.S. 158, 160, (1922) ("…both defendants are sued as corporate entities created by the United States for governmental purposes; and, if that be their status, they are not citizens of any state…"); *Koppers Co. v. Garling & Langlois*, 594 F.2d 1094, 1097 n. 1 (6th Cir. 1979) (The United States is "a party who may not be sued in diversity.").

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *See* Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack

---

[12] Here, Plaintiff brings an action against the Secretary of Health and Human Services in her official capacity. (Dkt. 1, p. 1.) When a Plaintiff brings an action against a Defendant in his or her official capacity, that action is treated as an action against the entity of which the Defendant is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Since the Secretary of Health and Human Services is an agent of the United States, the action must be treated as if it were an action against the United States, which is not a party that can be sued in diversity. *See Graham*, 473 U.S. at 165; *see also Koppers Co. v. Garling & Langlois*, 594 F.2d 1094, 1097 n. 1 (6th Cir. 1979).

challenges the sufficiency of the pleading itself. Where the Rule 12(b)(1) motion presents a facial attack, the Court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party, similar to the standard for a Rule 12(b)(6) motion. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974).)

In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." *Id.* Where the motion presents a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness and the Court weighs the evidence to determine whether subject matter jurisdiction exists. On a factual attack, the Court has broad discretion to consider extrinsic evidence, including affidavits and documents, and can conduct a limited evidentiary hearing if necessary. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In this case, Defendant is making a factual challenge to the Court's jurisdiction. (*See* Dkt. 7, p. 9.)

## IV.   ANALYSIS

Defendant's motion presents the question whether this Court has subject matter jurisdiction over this case. Given that diversity jurisdiction is not available in an action against a federal agency because such an agency is a not citizen of any state for purposes of 28 U.S.C. § 1332, Plaintiff must establish jurisdiction on the basis of a federal question. According to Defendant, federal question jurisdiction

does not exist because the Medicare Act, pursuant to 42 U.S.C. §405(g)-(h),[13] provides that the sole route to judicial review is through the Medicare appeals process and Plaintiff has not even presented a valid claim let alone completed that process. (Dkt. 7, pp. 6-7.)

Defendant argues that Plaintiff cannot pursue the Medicare appeals process because it seeks to appeal a claim that has been rejected for improper coding rather than formally denied via an initial determination. (*Id*.) Given that a rejection is not a denial and therefore not an initial determination appealable through the Medicare appeals process, Defendant asserts that Plaintiff has satisfied neither the presentment (presented a valid claim) nor exhaustion (exhausted its administrative remedies) requirements for judicial review under § 405(g). (*Id*.) Defendant asserts that Plaintiff is not entitled to have its claim considered even if it were to be corrected and resubmitted because the deadline for submitting a claim has now passed.[14]

Plaintiff does not argue that it has properly presented a claim. Instead, Plaintiff requests equitable relief. First, Plaintiff argues that the exhaustion requirement should be waived in this case because it was futile for Plaintiff to

---

[13] These provisions of the Social Security Act have been incorporated into the Medicare Act. Section 405(h) has been incorporated into the Medicare Act by 42 U.S.C. § 1395ii while the judicial review provisions of § 405(g) have been incorporated into the Medicare Act by 42 U.S.C. § 1395ff(b)(1)(A).

[14] At the hearing, when asked whether Medicare would consider Plaintiff's claim after the statutory deadline had expired were Plaintiff to resubmit it with the correct coding, Defense counsel could not say definitively whether the claim would be considered despite being untimely, but emphasized that Medicare would not be required by law to consider it. In light of Medicare's statutory purpose of providing coverage, refusing to consider Plaintiff's claim simply because of an unintentional coding error would appear a callous and draconian action by the agency.

13

attempt to exhaust its administrative remedies beyond its request for a redetermination submitted to Novitas. (Dkt. 13, pp. 9-11.) Moreover, Defendant should be equitably estopped from arguing failure to exhaust given Plaintiff's reliance on Dyer's alleged misrepresentations regarding claim status and futility of resubmission. (*Id.* at 11-13.) Finally, if the Court decides that it does not have jurisdiction, the Court should "toll the time requirements of 42 C.F.R. § 424.44(a)(1)[15] given Defendant's bad faith actions in processing [Plaintiff's] claim" (*Id.* at 11) or order Novitas to grant Plaintiff a six-month extension of the claim submission deadline pursuant to 42 C.F.R. § 424.44(b)(5)[16] (Dkt. 17, p. 4).

The Court has carefully considered the parties' arguments and all available evidence and will find that Plaintiff has not met its burden of establishing that jurisdiction exists in this case. Because Plaintiff has not established that it has satisfied either the presentment or exhaustion requirement of §405(g), this case will be dismissed for lack of subject matter jurisdiction.

## A. The Presentment and Exhaustion Requirements Are Not Met

Plaintiff contends that the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. The Court's jurisdiction over Medicare cases is

---

[15] This section of the Code of Federal Regulations requires that a claim "must be filed no later than the close of the period ending 1 calendar year after the date of service." 42 C.F.R. § 424.44(a)(1).

[16] This section provides that where a failure to meet the one-year deadline for filing a claim "was caused by error or misrepresentation of an employee, Medicare contractor (including Medicare Administrative Contractor, intermediary, or carrier), or agent of HHS that was performing Medicare functions and acting within the scope of its authority," the time to file a claim "will be extended through the last day of the sixth calendar month following the month in which either the beneficiary or the provider or supplier received notification that the error or misrepresentation" was corrected. 42 C.F.R. § 424.44(b)(5).

limited by 42 U.S.C. §§ 405(g) and (h), which specifically prevent a claimant from pursuing judicial review of claims "arising under" the Medicare Act, 42 U.S.C. § 1395, *et seq.*,[17] except where the Secretary issues a "final decision", as provided in 42 U.S.C. § 405(g). A "final decision" is rendered on a Medicare claim only after the individual claimant has pressed her claim through all designated levels of administrative review. *See* 42 U.S.C. §§ 1395hh, 1395ii.

As 42 U.S.C. § 405(h) states, "[n]o action against the United States, [the Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." According to the Supreme Court, "§ 405, to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all '[claims] arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 615, (1984) (alteration in original). This section thus severely restricts the authority of federal courts because it "demands the 'channeling' of virtually all legal attacks through the agency". *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

Section 405(h) is not a complete bar to judicial review, however. Any person or group of individuals who wants to challenge an adverse final decision of the

---

[17] The parties do not dispute that Plaintiff's claim "arises under" the Medicare Act and regardless that language is to be read very broadly. *See Heckler v. Ringer*, 466 U.S. 602, 615 (1984). Just as the *Heckler* Plaintiffs' claims were claims that Medicare should pay for their surgery, Plaintiff's claim in this case is that Medicare should pay it for services performed. *See id.* at 614 ("It seems to us that it makes no sense to construe the claims of those three respondents as anything more than, at bottom, a claim that they should be paid for their BCBR surgery."). The statute is clear that Plaintiff may only pursue judicial review under 42 U.S.C. §§ 405(g) and (h) after exhausting its administrative remedies. The Court's analysis will therefore focus on whether Plaintiff satisfied the presentment and exhaustion requirements of §405(g).

Secretary in federal court may do so by satisfying the jurisdictional requirements of 42 U.S.C. § 405(g):

> Any individual, after any final decision of [the Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

42 U.S.C. § 405(g). Section 405(g) thus specifies that a "final decision of [the Secretary] made after a hearing" is a prerequisite for judicial review. According to the Supreme Court, this requirement is "central to the requisite grant of subject-matter jurisdiction—the statute empowers district courts to review a particular type of decision by the Secretary, that type being those which are 'final' and 'made after a hearing.'" *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975).

In *Mathews v Eldridge,* 424 U.S. 319 (1976), the Supreme Court held that the "final decision" requirement of § 405(g) consists of two elements: (1) presentment of a claim; and (2) exhaustion of administrative remedies. 424 U.S. at 328.

Defendant argues that Plaintiff has satisfied neither of these elements. Presentment is a jurisdictional and nonwaivable requirement that a claim for benefits must be presented to the Secretary in the first instance. *See id.* ("Absent such a claim there can be no 'decision' of any type. And some decision by the Secretary is clearly required by the statute."). Presentment is satisfied "[s]o long as the Secretary is given an opportunity to make an initial decision". *Caswell v.*

*Califano*, 435 F. Supp. 127, 133 (D. Me. 1977) *aff'd*, 583 F.2d 9 (1st Cir. 1978) (citing *Mathews*, 424 U.S. at 328-30).

Exhaustion requires that the administrative remedies prescribed by the Secretary be exhausted before judicial review is available. *Mathews*, 424 U.S. at 328. The exhaustion requirement "assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts." *Illinois Council*, 529 U.S. at 13. While exhaustion is waivable in limited circumstances, the presentment requirement must be satisfied first because it is a nonwaivable, essential, and distinct precondition for § 405(g) jurisdiction. *See Mathews*, 424 U.S. at 328-29; *see also Ringer*, 466 U.S. at 621 (exhaustion requirement cannot be satisfied because claimant had "not given the Secretary an opportunity to rule on a concrete claim for reimbursement"); *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 359 (6th Cir. 2000) (presentment is nonwaivable, exhaustion is waivable by the Secretary); *Wyninger v. Thompson*, No. 03-2481 M1, 2004 WL 2375636, at *6 (W.D. Tenn. Mar. 24, 2004) (Plaintiff could not show that exhaustion of administrative remedies would be futile where the Secretary had not even issued an initial determination.)

There is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). The Sixth Circuit has clarified, however, that "virtually all legal challenges to an administrative determination must be channeled through the

17

Secretary's administrative process before judicial review is available as set forth in § 405(g), and any claimed exceptions to this requirement of exhaustion of administrative remedies must be examined critically." *Cathedral Rock*, 223 F.3d at 359.

When bringing a claim through the prescribed administrative appeal process would amount to "no review at all" of the claim, however, the Supreme Court has stated that administrative appeals may be bypassed and 28 U.S.C. § 1331 invoked. *Illinois Council*, 529 U.S. at 19. If channeling Plaintiff's claims through the Medicare review process "will amount to the 'practical equivalent of a total denial of judicial review,' " Plaintiff may bring those claims under 28 U.S.C. § 1331. *Id.* at 20 (quoting *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 497 (1991)).[18]

This exception is narrow and does not permit a party to avoid § 405(h) with a mere showing that postponement of judicial review would mean inconvenience or cost to Plaintiff. *Id.* at 22. As *Illinois Council* established, delays in the administrative process, or hardships related to the delay, are not sufficient to allow parties to proceed directly to federal court, and Congress was aware that it was

---

[18] In *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497 (1991), for example, the United States Supreme Court held that a district court had general federal question jurisdiction to entertain a class action brought by aliens who claimed that the INS was administering the Special Agricultural Workers amnesty program in a way that violated due process and the Immigration Reform and Control Act of 1986. The Supreme Court found that "restricting judicial review to the courts of appeals as a component of the review of an individual deportation order is the practical equivalent of a total denial of judicial review of generic constitutional and statutory claims." *Id.* Other examples where an agency practice or action has been found to totally preclude judicial review include *Nat'l Ass'n of Psychiatric Health Sys. v. Shalala*, 120 F. Supp. 2d 33, 38 (D.D.C. 2000), where the District Court had subject matter jurisdiction because forcing a hospital to violate a condition of participation in the Medicare program and face termination from the program in order to contest the validity of a rule was a total denial of judicial review.

imposing these costs and delays on health-care providers. *See id.* at 13; *see also Vertos Med., Inc., v. Novitas Sols., Inc.*, 2012 WL 5943542, *5 (S.D. Tex. Nov. 27, 2012). The question is whether Plaintiff "is simply being required to seek review first through the agency or is being denied altogether the opportunity for judicial review." *Cathedral Rock*, 223 F.3d at 360. Here, Plaintiff has not made a plausible showing of a legal impossibility to judicial or administrative review; therefore, the Court will not find complete preclusion of judicial review in this case.

### 1. Plaintiff has not Satisfied the Presentment Requirement

Here, Plaintiff does not argue that it has satisfied the presentment requirement, but even if Plaintiff asserted that it had, this argument would fail because Plaintiff never received even an initial determination on its claim. While Plaintiff did *attempt* to submit a claim, attempting to submit a claim is not the same as presenting a claim. *See Wright v. Sebelius*, 818 F. Supp. 2d 1153, 1160 (D. Neb. 2011) (holding that attempting to submit a claim and receiving a preliminary calculation of benefits from a Medicare contractor does not satisfy presentment because no initial determination subject to reconsideration had been made).

Plaintiff's claim was rejected for improper coding. Where Medicare or one of its designated contractors like Novitas finds "that a request for payment or other submission does not meet the requirements for a Medicare claim as defined in § 424.32 of this chapter, [such a finding] is not considered an initial determination." 42 C.F.R § 405.924(b). Plaintiff did not correct and resubmit its claim even though the rejection notice it received contained an explanation of the reason for the

rejection and instructions that the claim needed to be resubmitted. As a result, Plaintiff's claim was never presented to the Secretary, or any agent, for consideration.

Consequently, Plaintiff has never received any formal indication such as a Remittance Advice notice that its claim had been accepted, considered, or denied. The only documented, written communication Plaintiff has received in response to its attempt to submit a claim is a notice indicating that Plaintiff's claim needed to be corrected and resubmitted because it had been automatically rejected due to a coding error. Plaintiff did submit a redetermination request some seven months after receiving the claim rejection notice, but it did so without first receiving the requisite Remittance Advice notice containing the initial determination to be reconsidered. *See* Centers for Medicare and Medicaid Services, *Medicare Parts A & B Appeals Process*, pp. 2-3 (Feb. 2015); *see also* 42 C.F.R. § 405.942(a).

Because Plaintiff's claim was not pending in FISS when the redetermination request was submitted, there was no denial or initial determination of any kind to reconsider. While Plaintiff contends that Novitas employee Dyer told Plaintiff that the claim had been denied, the record is clear that the agency was never given an opportunity to make an initial determination and Plaintiff never received any formal indication that such a determination had been made. Without an initial determination, or the opportunity for the Secretary to make one, a claim has not been presented for purposes of §405(g). *See Mathews*, 424 U.S. at 328-30; *see also Caswell,* 435 F. Supp. at 133.

20

Accordingly, Plaintiff has not met the nonwaivable presentment requirement for judicial review pursuant to § 405(g) and the Court cannot exercise subject matter jurisdiction over this case. The Court will nevertheless address Plaintiff's arguments that it should not be required to exhaust its administrative remedies. As explained in greater detail below, however, Plaintiff, a provider and an experienced claimant in the Medicare claims process, is not excused from inexplicably disregarding the FISS notice and otherwise failing to adhere to established Medicare procedure and statutory deadlines.

## 2.  Plaintiff has not Satisfied the Exhaustion Requirement

As noted above, Plaintiff cannot show that exhaustion of its administrative remedies is futile without first satisfying the nonwaivable presentment requirement. Even if the Court were to find that Plaintiff had presented a claim, Plaintiff's argument that the exhaustion requirement should be waived as futile is unavailing.

The Supreme Court has made clear that if this administrative review process is available, it must be followed, even if it is time-consuming, and even if the agency cannot grant the relief sought. *See Illinois Council*, 529 U.S. at 20, 22–24. The exhaustion requirement allows the agency to compile a detailed factual record and apply agency expertise in administering its own regulations, something completely lacking in this case. This requirement, although fundamental, may be waived in limited circumstances.

In *Bowen v. City of New York*, 476 U.S. 467, 482-86 (1986), the Supreme Court identified three factors to be considered in deciding whether to waive the exhaustion requirement: (1) whether the claims at issue are collateral to the underlying decision as to eligibility for entitlements; (2) whether claimants would be irreparably harmed were the exhaustion requirement enforced against them; and (3) whether exhaustion of administrative remedies would be futile. S*ee also Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 580 (6th Cir. 1995); *Day v. Shalala*, 23 F.3d 1052, 1059 (6th Cir. 1994).

Plaintiff maintains that the third factor is determinative here. The exhaustion of administrative remedies may be waived "if it would be futile, that is, if there is no reasonable prospect that the applicant could obtain any relief by pursuing them." *Manakee*, 71 F.3d at 581. Plaintiff argues that despite receiving the FISS notice that its claim had been rejected and could be corrected and resubmitted, it understood from Dyer that its claim had been denied and that it would be futile to resubmit it because Medicare would not pay the claim until the products liability suit was resolved. (Dkt. 13, p. 9.) In light of Dyer's representations, and because Plaintiff received no response to its request for redetermination when a response was required, Plaintiff maintains that its "only recourse was to file suit" at that point. (*Id.*)

The Court disagrees. The five-step Medicare appeals process is well-established and explicitly provides for judicial review only of the Secretary's final decision. *See* 42 C.F.R. §§ 405.900 et seq. Even though Plaintiff never received an

22

initial determination from the Secretary, Plaintiff began the appeals process by filing a redetermination request with Novitas. (Dkt. 1, Ex. E.) Plaintiff does not reference Dyer in its request letter, but states that it understands its claim has been denied and requests that this denial be reconsidered and its claim referred for conditional payment. (*See id.*) Because Plaintiff never resubmitted its claim, no claim was pending in FISS when the redetermination request was sent.

In general, upon receipt of a timely request for redetermination, Novitas is required to mail or otherwise transmit written notice of its redetermination within 60 days. 42 C.F.R. § 405.950(a). Here, for reasons that are not known, Novitas never responded to Plaintiff's redetermination request. Plaintiff argues that this oversight, in conjunction with Dyer's representations, justifies forgoing the next three steps in the appeals process and coming directly to federal court without an initial or final decision from the Secretary for this Court to review.

Plaintiff, however, has never raised the issue of Novitas' failure to respond with either Novitas or Medicare and thus neither has had the opportunity to investigate or correct this potential oversight. Alleging an irregularity in agency procedure is insufficient support for a waiver of the exhaustion requirement. The Supreme Court stated in *Bowen,* 476 U.S. at 484–85, that an agency's "mere deviation from the applicable regulations ... [is] fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation." *See also Manakee*, 71 F.3d at 581. The *Bowen* Court clarified that exhaustion is not waivable "whenever a claimant alleges an irregularity in the

agency proceedings" because the agency's expertise in applying its own regulations should afford the agency "the opportunity to review application of those regulations to a particular factual context." 476 U.S. at 485. Plaintiff does not explain why, after receiving no response from Novitas, it did not follow up with Novitas, express its concerns about Dyer to Novitas, or proceed to the next levels of review in an attempt to get a response from the agency and to draw attention to Novitas' potential oversight or Dyer's alleged misrepresentations.[19]

Plaintiff seeks to have its claim considered even though the one-year deadline for submitting its claim has passed. Plaintiff maintains that the Court should excuse this failure and extend the statutory deadline, either by applying principles of equitable tolling or by ordering Novitas to grant Plaintiff a six-month extension under 42 C.F.R. § 424.44(b)(5)[20] to file its claim. Plaintiff cites no case law that would support either request. The preliminary problem, however, is that neither Novitas nor Medicare has been given the opportunity to consider the arguments for relief that Plaintiff is making to this Court.

Before Plaintiff can come to this Court, Plaintiff must ask the agency to interpret and apply its own regulations to this case because the agency may still be able to grant Plaintiff the relief it seeks. *See Illinois Council*, 529 U.S. at 13. With

---

[19] According to Plaintiff, it last spoke with Dyer regarding the Mattila claim on October 23, 2013, nearly four months before it filed its request for a redetermination. (*See* Dkt 17, Ex. A, ¶ 6.) Plaintiff asserts that it understood from that conversation that its Mattila claim was denied and that resubmitting it would be futile. (*Id.* at ¶¶ 7-8.) Plaintiff does not claim that it spoke with Dyer regarding the lack of response from Novitas or the viability of continuing the appeals process, thus it is not apparent that Dyer ever made any representations relevant to those issues.

[20] At oral argument, the Court raised the potential application of this regulation. Defense Counsel expressed a reluctant willingness to consider its application, and Plaintiff's Counsel stated that he would make an argument under that regulation to Medicare.

respect to 42 C.F.R. § 424.44(b)(5), that section states that "[i]f CMS or one of its contractors determines that a failure to meet the [one-year deadline] was caused by error or misrepresentation of an employee, [or] Medicare contractor (including Medicare Administrative Contractor, intermediary, or carrier)", the time to file a claim will be extended by six months from the date Plaintiff receives notice that the error or misrepresentation has been corrected. No extension can be granted under this section if the request is made "to CMS or one of its contractors more than 4 years after the date of service." *Id.*

According to this regulation, either CMS or one of its contractors decides whether a six-month extension is warranted. *See* 42 C.F.R. § 424.44(b)(5). If Plaintiff believes that Dyer's "error or misrepresentation" caused Plaintiff's failure to meet the one-year deadline for claim submission, Plaintiff can still make its case to "CMS or one of its contractors". *See* 42 C.F.R. § 424.44(b)(5). If Novitas or CMS agrees a mistake was made that caused the delay, the regulatory language indicates that Plaintiff will have an additional six months from the date it receives notice of the correction of any error or misrepresentation to resubmit its Mattila claim and seek the relief that Plaintiff currently seeks from this Court. Accordingly, on the issue of futility, Plaintiff cannot show that there "is no reasonable prospect that the applicant could obtain any relief by pursuing" the administrative review process. *Manakee*, 71 F.3d at 581.

A well-established administrative review process exists for appealing the Secretary's initial determination of a Medicare claim. That administrative

procedure, far from precluding judicial review, explicitly provides for such review once the Secretary has reached a final decision. Because Plaintiff fails to satisfy the nonwaivable presentment requirement, it has not exhausted administrative remedies as required by § 405(g) and (h). This Court therefore lacks subject matter jurisdiction over this matter. *Ringer*, 466 U.S. at 621 ("Because Ringer has not given the Secretary an opportunity to rule on a concrete claim for reimbursement, he has not satisfied the nonwaivable exhaustion requirement of § 405(g). The District Court, therefore, had no jurisdiction as to respondent Ringer.").

## B. The Court will not Apply Equitable Estoppel

Plaintiff further asserts that Defendant should be equitably estopped from relying on exhaustion because of Dyer's alleged misrepresentations that the Mattila claim had been denied and that its resubmission would be futile. "The traditional elements required to invoke equitable estoppel are a definite misrepresentation by one party, intended to induce some action in reliance, and which does reasonably induce action in reliance by another party to his detriment." *Heckler*, 467 U.S. at 59; *See also U.S. v. Guy*, 978 F.2d 934, 937 (6th Cir. 1992.)

Estoppel, however, cannot be used against the government on the same terms as against private parties. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 419 (1990); *Heckler*, 467 U.S. at 60; *United States v. River Coal Co., Inc.*, 748 F.2d 1103, 1108 (6th Cir. 1984) (ordinarily the United States is not estopped by acts of individual officers and agents); *Housing Authority of Elliott County v. Bergland*, 749 F.2d 1184, 1190 (6th Cir. 1984) (equitable estoppel generally is not available

against the government); *Guy*, 978 F.2d 934 (6th Cir. 1992) (equitable estoppel is not available where taxpayer unreasonably relied on an IRS agent's "certain oral assurances" to taxpayer that the IRS would not pursue taxpayer for outstanding tax liability). "At the very minimum, some affirmative misconduct by a government agent is required as a basis of estoppel." *Guy*, 978 F.2d at 937.

Plaintiff alleges bad faith on the part of Medicare generally, but not that Dyer engaged in any "affirmative misconduct." Moreover, Plaintiff does not claim that it spoke with Dyer after submitting its redetermination request; there is thus no allegation that Dyer ever made representations about the lack of response from Novitas or the viability of the Medicare appeals process for Plaintiff. Furthermore, Dyer's representations were oral; and as the Supreme Court stated in *Heckler*:

> It is not merely the possibility of fraud that undermines our confidence in the reliability of official action that is not confirmed or evidenced by a written instrument. Written advice, like a written judicial opinion, requires its author to reflect about the nature of the advice that is given to the citizen, and subjects that advice to the possibility of review, criticism, and reexamination. The necessity for ensuring that governmental agents stay within the lawful scope of their authority, and that those who seek public funds act with scrupulous exactitude, argues strongly for the conclusion that *an estoppel cannot be erected on the basis of the oral advice....*

467 U.S. at 65 (emphasis added).

Finally, the Court notes that equitable estoppel cannot be used as a way to establish subject-matter jurisdiction. *See American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18 (1951) (principles of estoppel do not apply to subject-matter jurisdiction); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) ("...no action of the parties can confer subject-matter

jurisdiction upon a federal court…[the] principles of estoppel do not apply…");
*Dunklebarger v. Merit Sys. Prot. Bd.*, 130 F.3d 1476, 1480 (Fed. Cir. 1997) ("It is
well settled that no action of the parties can confer subject-matter jurisdiction on a
tribunal and that the principles of estoppel do not apply to vest subject-matter
jurisdiction where Congress has not done so."); *Franzel v. Kerr Mfg. Co.*, 959 F.2d
628, 629-630 (6th Cir. 1992) (citing *American Fire*, 341 U.S. 6 for the proposition
that principles of estoppel may not be used to confer subject-matter jurisdiction).
Plaintiff cites no authority to the contrary.

As the Supreme Court noted in *Heckler v. Community Health Services of
Crawford County, Inc.*, the general rule is that "those who deal with the
Government are expected to know the law and may not rely on the conduct of
Government agents contrary to the law." 467 U.S. 51, 63 (1984). Providers like
Plaintiff are "repeat players" who voluntarily participate in the Medicare system,
and thus cannot claim lack of notice of the Secretary's regulations. *See Sebelius v.
Auburn Re'l Med. Ctr.*, 133 S. Ct. 817, 828 (2013). The Court will not apply
equitable estoppel here.

## C. The Court will not Apply Equitable Tolling

Plaintiff's final argument is that equitable tolling principals should excuse its
failure to resubmit its claim within the Medicare Act's one-year deadline. *See* 42
C.F.R. 424.44(a)(1). Equitable tolling is argued to apply because of Defendant's
unspecified "bad faith actions" in processing the claim. (Dkt. 13, p. 11.) Plaintiff
cites no case in which a court has tolled this one-year deadline. (*See* Dkts. 13, 17.)

Instead, Plaintiff relies on the Supreme Court's decision in *Am. Pipe & Const. Co. v. Utah,* a case involving the statute of limitations under the Clayton Act and Rule 23 of Federal Rules of Civil Procedure which established that the filing of a class action complaint tolls the statute of limitations applicable to the claims of absent class members. 414 U.S. 538, 552-53 (1974). In that case, which is easily-distinguishable from the facts of this one, the Court generalized about the authority of federal courts to toll a statute of limitations by stating that where a "plaintiff has refrained from commencing suit during the period of limitation because of inducement by the defendant" or "because of fraudulent concealment," the Court tolls the statutory period. *Id.* at 559.

This argument is underdeveloped and unavailing. "Congress vested in the Secretary large rulemaking authority to administer the Medicare program." *Auburn*, 133 S. Ct. at 826 (holding that provision of Medicare statute setting 180-day limit for a provider to appeal to the Provider Reimbursement Review Board was not subject to equitable tolling). Plaintiff is a provider who has elected to participate in the Medicare system and cannot claim ignorance of the regulations that govern that system. *Id.* at 828. Plaintiff received a rejection notice directing it to correct its own error and resubmit its claim. The one-year time limit to submit a claim is clearly stated in 42 C.F.R. 424.44(a)(1), and exceptions to this deadline are listed in 42 C.F.R. 424.44(b). While the agency may equitably toll this limitations period under the facts before the Court, Plaintiff has presented no sound basis which would convince the Court to do so at this time.

29

## V.      CONCLUSION

The purpose of Medicare is to create a program to reimburse health care providers who have valid claims. In this case, that program has clearly not served its function. However, a Plaintiff that ignores the available administrative procedures may not simply choose its own path to federal court. Accordingly, for all of the reasons explained above, Defendant's Motion to Dismiss (Dkt. 7.) is **GRANTED**. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  February 8, 2016

### Certificate of Service

I hereby certify that this Order was electronically submitted on February 8, 2016, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager